# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| JENNIFER ANN HAMMONS,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | CV 19-49-H-JTJ<br><br>**ORDER** |

**BACKGROUND.**

Plaintiff Jennifer Ann Hammons ("Hammons") brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401−433. The Commissioner filed the certified Administrative Record. Doc. 4.

**JURISDICTION.**

The Court has jurisdiction under 42 U.S.C. § 405(g). Venue is proper because Hammons resides in Lewis & Clark County, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3).

1

**PROCEDURAL BACKGROUND.**

Hammons applied for Social Security Disability Insurance Benefits on April 14, 2013, alleging a disability onset date of August 31, 2011. Doc. 4-10 at 692. The Social Security Administration denied her claim. Doc. 13 at 2. Hammons filed a written request for a hearing before an administrative law judge ("ALJ"). *Id*. The ALJ held a hearing on October 6, 2015. *Id*. The ALJ determined that Hammons was not disabled and denied Hammons's claim. *Id*. Hammons requested that the Appeals Council review the ALJ's determination. *Id*. The Appeals Council denied review on April 28, 2017. *Id*.

Hammons filed suit in the United States District Court, asking the Court to reverse or remand the Commissioner's decision. *Id*. United States Magistrate Judge John Johnston issued a Findings and Recommendations, recommending that the case be remanded for further proceedings. Doc. 13. United States District Judge Dana Christensen adopted Judge Johnston's recommendation and remanded the case for further proceedings. *Id*.

A different ALJ conducted a new hearing on February 14, 2019. *Id*. at 3. The ALJ again determined that Hammons was not disabled and denied Hammons's claim. *Id*. Hammons requested that the Appeals Council review the ALJ's determinations. The Appeals Council denied review on June 3, 2019. *Id*. Hammons

again requests the Court to reverse or remand the Commissioner's final determination.

**STANDARD OF REVIEW.**

The Court conducts limited review. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence constitutes "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

The ALJ remains responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject those findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

**BURDEN OF PROOF**.

A claimant is disabled for purposed of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a

"medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)(citing 42 U.S.C. § 1382(a)(3)(A)-(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof for steps one through four, and the Commissioner bears the burden of proof for step five. *Id*. The five steps of the inquiry are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific

impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 20 C.F.R. 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. 404.1520(f), 416.920(f).

*Id*. at 954.

**ANALYSIS.**

**A. ALJ's Disability Determination.**

The ALJ followed the 5-step sequential evaluation process in evaluating Hammons's claim. Doc. 4-10 at 694−710. The ALJ found that Hammons last met the insured requirements of the Social Security Act on December 31, 2014. *Id*. at 694. At step one, the ALJ determined that Hammons had not engaged in substantial gainful activity since the alleged onset of Hammons's impairment on August 31, 2011. *Id*.

At step two, the ALJ found that Hammons has the followings severe impairments: multiple sclerosis and fibromyalgia/myalgia. *Id*. The ALJ found that Hammons has the following non-severe impairments: degenerative disc disease, obesity, allergic rhinitis, status-post right ankle fracture, hypothyroidism, thyroid

5

nodules, sinusitis, bronchitis, and status-post gallbladder surgery. *Id*. at 695. The ALJ determined that these non-severe impairments are not reasonably expected to have more than a minimal effect on Hammons's ability to work. *Id*. At step three, the ALJ found that Hammons did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404. *Id*. at 698.

At step four, the ALJ found that Hammons possessed the residual functional capacity to perform with limitations the following light work:

> Hammons can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally. She can stand and/or walk for about six hours in an eight-hour workday. She can sit for about six hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolds. She can frequently climb ramps and/or stairs. She can frequently balance. She should avoid concentrated exposure to extreme temperatures and to hazards such as unprotected heights, dangerous machinery, and wet, slippery, and uneven surfaces. She can understand, remember, and carry out simple, detailed, and complex tasks. She can maintain attention, concentration, persistence, and pace for such tasks over eight-hour workdays, and 40-hour workweeks. She can tolerate usual work situations and changes in the routine work setting. All of the foregoing limitations are to be considered sustained work activity in an ordinary work setting on a regular and continuing basis.

*Id*. at 699.

Based on this residual functional capacity, the ALJ found that Hammons can perform past relevant work as a telephone solicitor. *Id*. at 708. The ALJ did not proceed to step five because the ALJ concluded in step four that Hammons can perform past relevant work. *See Bustamante*, 262 F.3d at 954.

**B. Hammons's Objections to the ALJ's Disposition.**

Hammons argues that the ALJ erred in the following ways: (1) The ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Hammons's residual functional capacity; (2) The ALJ failed to properly consider the VA disability decision; and, (3) The ALJ failed to properly evaluate Hammons's testimony. Doc. 13 at 1.

### 1. The ALJ Failed to Properly Weight the Medical Opinion Evidence and Failed to Properly Determine Hammons's Residual Functional Capacity.

Hammons argues that the ALJ erroneously gave minimal weight to the opinions of Hammons's treating internist, Dr. Chronister. Doc. 13 at 26. The ALJ gave Dr. Chronister's opinions "minimal weight" because Hammons was not in acute distress during office visits with Dr. Chronister. *Id*. Hammons argues that her status during office visits remains largely irrelevant to the status of her chronic symptoms. *Id*.

### 2. The ALJ Failed to Properly Consider the VA Disability Decision.

Hammons argues that the ALJ erred when the ALJ gave "some weight" to the VA disability decision. *Id*. at 31. Hammons cites *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) for the proposition that an ALJ must give "great weight" to a VA determination of disability. *Id*.

### 3. The ALJ Failed to Properly Evaluate Hammons's Testimony.

7

Hammons argues that the record does not contain the substantial evidence necessary to support the ALJ's evaluation of Hammons's subjective statements. *Id*. at 33. Hammons asserts that the ALJ often mischaracterized the record in discrediting Hammons's complaints of subjective symptoms. *Id*. For example, Hammons claims that the ALJ determined that Hammons did not request pain medication for treatment despite the record indicating that Hammons requested medication for her fibromyalgia and painful neuropathy. *Id*. at 37.

**C. Commissioner's Position.**

The Commissioner responds with the following arguments: (1) the Court should refuse to address the issue of the weight that the ALJ gave to Dr. Chronister's opinions because the Court has already addressed the issue; (2) the ALJ gave sufficient reasons for discrediting Hammons's symptom allegations; and, (3) the ALJ gave sufficient reasons for discrediting the VA disability determination. Doc.14.

**1. The Court should refuse to address the issue of the weight the ALJ gave to Dr. Chronister's opinions because the Court has already addressed the issue.**

The Commissioner argues that the Court should not address Hammons's claim that the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Hammons's residual functional capacity. Doc. 14 at 4. The Commissioner claims that the law of the case doctrine prohibits the Court from

8

considering an issue that has already been decided by the same court or a higher court. *Id*. at 5 (citing *Stacy v. Colvin*, 825 F.3d 563, 567 (2016)). The Court determined in Hammons's first appeal that the ALJ provided sufficient reasons to discredit Dr. Chronister's opinion. Doc. 4-11 at 63.

### 2. The ALJ gave sufficient specific reasons for discrediting Hammons's symptom allegations.

The Commissioner argues that the ALJ gave sufficient reasons for discrediting Hammons's symptom allegations. Doc. 14 at 8. For example, the ALJ relied on the fact that Hammons continued to work for years, despite her medical conditions, before she alleged disability. *Id*. Moreover, the ALJ relied on the fact that Hammons failed to allege any worsening of symptoms between the period in which she was working and the date she alleged disability. *Id*. The Commissioner also cites, among numerous other examples, that the ALJ relied on the fact that Hammons's medical provider often released Hammons without limitations of any kind. *Id*. at 9.

### 3. The ALJ Gave Legally Sufficient Reason for Discrediting the VA Disability Rating.

The Commissioner argues that the ALJ did not err in giving the VA disability rating "some weight" because the record contained sufficient evidence that the VA did not consider. *Id*. at 14. For example, the ALJ gave considerable weight to largely normal clinical findings from consultative examiner Dr. Ortiz, who examined

9

Hammons after the VA's first determination in March 2013. *Id*. Additionally, when the VA reconsidered Hammons's disability in 2017, the VA did not consider Dr. Ortiz's examination. *Id*. at 15.

**DISCUSSION.**

**1. Medical Opinion Evidence.**

Hammons argued that the ALJ erred in giving "minimal weight" to the opinions of treating internist Dr. Chronister when the law requires generally that the ALJ give treating physicians "controlling weight." Doc. 13 at 25−26 (citing 20 C.F.R. § 404.1527(c)(2)). The Commissioner argues that the Court should not address this issue because the Court already decided the issue on the last appeal. Doc. 14 at 4. The Court agrees with the Commissioner.

The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by the same court or a higher court in the same case. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The Court previously found that the ALJ provided specific and legitimate reasons for discrediting Dr. Chronister's opinions. Doc. 4-11 at 63. The Court previously found that substantial evidence existed in the record to support the ALJ's reasons. *Id*. The Court also previously found that the ALJ did not err in excluding Dr. Chronister's opinions when assessing Hammons's residual functional capacity. *Id*.

On this appeal, Hammons does not indicate that the record or the controlling law has changed substantially. *See Stacy*, 825 F.3d at 567. Nor has Hammons demonstrated that applying the law of the case doctrine would prove unjust. *Id*. The law of the case prohibits, therefore, the Court from reconsidering whether the ALJ erred in giving minimal weight to Dr. Chronister's opinions or in excluding Dr. Chronister's opinions in assessing Hammons's residual functional capacity. *Id*.

The Court's previous resolution of this issue controls. *Stacy*, 825 F.3d at 567. The Court finds that the ALJ did not err in giving minimal weight to Dr. Chronister's opinions or in excluding Dr. Chronister's opinions in assessing Hammons's residual functional capacity.

**2. The VA Disability Determinations.**

The VA disability determinations dated March 2013 and January 2015 determined that Hammons is 70 percent disabled and 100 percent unemployable. Doc. 4-10 at 707. A redetermination dated September 2017 concluded that Hammons is 80 percent disabled and 100 percent unemployable, but did not otherwise differ significantly. *Id*. The Court previously remanded this case to the ALJ, ordering the ALJ to give "great weight" to Hammons's VA disability determination or provide persuasive, specific, valid reasons supported by the record for giving little weight to the VA disability determinations. Doc. 4-11 at 58−61 (citing *McCartey v. Massanari*, 298 F.3d 1072, 1076, (9th Cir. 2002)).

11

In the latest decision, the ALJ gave "some weight" to the VA disability determination. Doc. 4-10 at 707. The ALJ based this decision on several factors. *Id*. First, the 2017 redetermination was based on evidence well after Hammons's date last insured. *Id*. Second, there exist no direct relationship between the VA rating system and the residual functional capacity determinations made by the Social Security Administration. *Id*. Third, the ALJ relied on evidence not available to the VA during its determinations. *Id*. In its briefing, the Commissioner walks back the first and second factors, instead relying solely on the rationale that the ALJ relied on evidence not available to the VA. None of the reasons stated in the ALJ decision (Doc. 4-10) or the reasons later asserted in the Commissioner's brief (Doc. 14) prove sufficient to give the VA disability determination less than "great weight." *See McCartey*, 298 F.3d at 1076.

The VA disability determination in March 2013 stated that Hammons is 70 percent disabled and 100 percent unemployable. Doc. 4-7 at 223. The VA disability determination in January 2015 stated that Hammons is 70 percent disabled and 100 percent unemployable. Doc. 4-8 at 649. The VA disability determination in September 2017 stated that Hammons is 80 percent disabled and 100 percent unemployable. Doc. 14 at 13. Hammons last met the insured requirements of the Social Security Act on December 31, 2014.

The ALJ's reliance on the fact that the September 2017 disability determination relied on evidence well beyond the Hammons's date last insured ignores important facts. For example, the VA disability determinations in 2013 and 2015 are nearly identical to the VA disability determination in 2017 and prove based on evidence from before Hammons's date last insured. The VA disability determinations remain consistent with Hammons's claim that the onset of her disability was August 2011.

The ALJ's assertion that "there is no direct relationship between the VA disability rating system and a finding of listing-level severity of medical impairments by Social Security" ignores the clear law of the Ninth Circuit. *See McCartey*, 298 F.3d at 1076. The Ninth Circuit determined that there exists "marked similarity" between Social Security Disability and a VA disability determination. *Id*.

> Both programs serve the same governmental purpose—providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the nation economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

*Id*. (internal citations omitted).

The ALJ's last rationale for discrediting the VA disability determination likewise proves insufficient. Doc. 4-10 at 707. The ALJ discredited the VA disability determination because the ALJ "considered medical evidence and opinion evidence that does not necessarily appear to be in the possession of the VA." *Id*. An ALJ must provide "persuasive, specific, valid reasons" for giving a VA disability determination any less than "great weight." *McCartey*, 298 F.3d at 1076. The ALJ's vague assertion that the ALJ considered medical evidence that the VA did not possess proves neither persuasive, specific, nor valid. *Id*. The ALJ fails to identify what medical evidence or opinion evidence the ALJ relied on that the VA did not possess. The ALJ further fails to articulate how that evidence contradicts or casts doubt on the accuracy of the VA disability determination. The ALJ erred as a matter of law, therefore, when it gave the VA disability determination less than "great weight." *See Bayliss*, 427 F.3d at 1214 n.1.

**3. Hammons's Medical Testimony.**

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain and other symptoms is supported by the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035−36 (9th Cir. 2007). First, an ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. at 1036. Second, if the claimant satisfies the first

14

burden, and there exists no evidence of malingering, "[an] ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

The ALJ conceded that Hammons's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Doc. 4-10 at 701. The ALJ nevertheless discredited Hammons's testimony after determining that Hammons's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. The ALJ provided sufficient specific, clear and convincing reasons for discrediting Hammons's testimony. *See Lingenfelter*, 504 F.3d at 1035−36.

The ALJ relies on many inconsistencies in the record. For example, the ALJ notes that Hammons began alleging neck and shoulder pain in 2006, yet she continued to work until 2011. Doc. 14 at 8. Hammons eventually alleged disability in 2011, but the record does not demonstrate a worsening of Hammons's impairments between 2006 while she remained employed and 2011 when she alleged disability. *Id*. A few months after Hammons's alleged onset date, Dr. Feeney examined Hammons and wrote that she was in a "good general state of health." *Id*. (citing Doc. 4-10 at 702). During this examination, Hammons denied body aches, fatigue, insomnia, arthritis, and muscle or joint pain, or poor

15

coordination. The ALJ found these denials inconsistent with her testimony that she suffered from widespread pain all over her body, and the only thing that helped was resting or lying down. *Id.*

The ALJ also noted that the record indicated that Hammons's symptoms improved with medication. Doc. 4-10 at 704. Hammons told Dr. Chronister, her treating internist, that medication improved her pain and Hammons noted that her fibromyalgia pain as one out of ten. Doc. 14 at 9. The ALJ determined, therefore, that the record contradicts Hammons's testimony. Improvement with conservative treatment provides a convincing reason to discount an allegation of disabling symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The ALJ also noted that the record indicated that Dr. Chronister and her other providers repeatedly released Hammons's without limitations. Doc. 4-10 at 706. An ALJ may discount a claimant's allegations if they conflict with a medical opinion about her ability to function. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162, (9th Cir. 2008). The ALJ believed it significant that Hammons's treating doctors did not determine that the severity of any of Hammons's conditions warranted significant restrictions on her activities. Doc. 4-10 at 705.

The Commissioner cites numerous other examples of inconsistencies in the record that undermine Hammons's testimony regarding the severity of her symptoms. *See* Doc. 14 at 7−13. The Court need not reiterate them all here. The examples above prove sufficient for the ALJ to discredit Hammons's testimony and to give a lesser weight to her symptom allegations. *See Lingenfelter*, 504 F.3d at 1035−36.

**CONCLUSION.**

The Court need not address the issue of the whether the ALJ erred in discrediting the testimony of Hammons's treating physicians because the Court previously determined that the ALJ provided sufficient reasons for discrediting the testimony of Hammons's treating internist. The ALJ provided sufficient reasons for discrediting Hammons's personal testimony regarding the severity of her symptoms. The ALJ erred in failing to give the VA disability determinations "great weight." Remanding the case back to allow the Social Security Administration a third swing at coming up with sufficient evidence to discredit the VA disability determination would prove futile. The VA determined on three separate occasions that Hammons was at least 70 percent disabled and 100 unemployable. When these determinations are given their proper weight, in conjunction with Hammons's and her treating physicians' testimony, it becomes clear that Hammons was disabled from August 31, 2011.

Accordingly, it is **ORDERED**:

1. Hammons's Motion for Summary Judgment (Doc. 13) is **GRANTED**.

2. The Commissioner's final decision denying Hammons's claims for disability insurance benefits is **REVERSED** and **REMANDED** for an immediate award of benefits beginning August 31, 2011.

4. The Clerk is directed to enter judgment accordingly.

Dated the 6th day of July, 2021.

_____
John Johnston
United States Magistrate Judge